# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROL COLBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-09-1356-HE |
| | ) | |
| OKLAHOMA SPINE HOSPITAL, L.L.C, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Carol Colbert filed this action against Oklahoma Spine Hospital, L.L.C. ("OSH") asserting claims under Title VII and state law. She alleges she was subjected to a racially hostile work environment and was discharged because of her race, because she engaged in protected activity, and because she filed a workers' compensation claim. Defendant has moved for summary judgment on all but plaintiff's hostile work environment claim.[1]

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes defendant's motion should be granted with respect to both retaliatory discharge

---

[1]*Although plaintiff included a hostile work environment claim in both her initial petition and the pretrial report, defendant did not address it in its motion/brief and made only a brief reference to a "racially hostile work environment" in its reply. Plaintiff did not contest the omission, but was required to address only those claims that were specifically challenged. However, if the only evidence plaintiff has to support her hostile work environment claim is Ms. Reed's alleged "you people" statement, the evidence will not be remotely close to what is necessary to survive a Fed.R.Civ.P. 50 motion.*

claims and denied with respect to plaintiff's race discrimination claim.

Background

Plaintiff began working part-time as a dietary aid at OSH on July 27, 2009. Katy Reed, the dietary manager, hired her and then, effective August 17, 2009, promoted her to a full-time position. When she was hired plaintiff was given a copy of OSH's employee policy manual, which explained both plaintiff's at-will status and OSH's complaint procedure.

On September 15, 2009, Ms. Reed met with plaintiff and three of her coworkers to discuss tension among the dietary department staff. She met again with the plaintiff and two other employees on October 12, 2009, to discuss errors made the previous day on patient meals. After the meeting Ms. Reed found the three employees arguing about who was at fault. She told them it did not matter who had made the mistakes, the diets just needed to be right.

Later that day plaintiff hit her head on a cabinet at OSH. She reported her injury to Ms. Reed, who helped plaintiff complete an incident report and then took her to the appropriate person to assist her in obtaining medical treatment. Plaintiff was treated at Concentra Medical for a mild concussion and was released to return to work the next day, October 13, 2009. While Ms. Reed did not say anything negative to plaintiff about being injured or discourage her from reporting the accident, plaintiff claims she "was kind of agitated" when plaintiff told her she had hit her head. Defendant's Exhibit 2, p. 88.

Dissatisfied with the treatment she received at Concentra, plaintiff went to another

hospital. En route she called Ms. Reed and told her what she was doing and Ms. Reed said "something about, 'Oh, he didn't take you off of work.'" Defendant's Exhibit 2, p. 91.[2] Plaintiff did not miss any work after October 12, 2009, as a result of her injury.

Plaintiff testified that, not long after she had started working at OSH, Ms. Reed stated during lunch that her husband had been "injured at work, and they were trying to figure out if they should – if he should file it on workmen's comp, and she told him, 'No. Let's just do it on the health insurance.'" Defendant's Exhibit 2, p. 77. Plaintiff admitted that Ms. Reed did not say she did not like workers' compensation or people who filed workers' compensation claims, but asserts Ms. Reed said that she did not believe in workers' compensation.[3] Plaintiff never heard Ms. Reed or any other management employees at OSH comment about her on-the-job injury.

Plaintiff testified that Ms. Reed made negative comments about another OSH employee, Patricia Bross, who had been injured on the job and had returned to work with lifting restrictions. Plaintiff claims Ms. Reed said that the woman was "acting like a big baby with her injury," and was not supportive of her. *Id*. at 78. Plaintiff asserts that Ms. Bross, who was discharged shortly after she was injured at work, could testify that she was fired

---

[2]Plaintiff asserts in her brief that Ms. Reed made the comment about not being taken off of work and "displayed a bad attitude toward Plaintiff." Other than the statement, no evidence is offered to demonstrate the claimed attitude.

[3]Plaintiff's testimony was that "Katy does not like doing workers' comp. She doesn't believe in that. She told me and some more workers that at the table, because when her husband was injured at work ...." Defendant's Exhibit 2, p. 76. Plaintiff skews this testimony which she asserts in her brief that "Ms. Reed <u>made an unsolicited statement to Plaintiff</u> during lunch subsequent to Ms. Bross' termination" about her husband's decision not to file a workers' compensation claim." Plaintiff's response, p. 10 (emphasis added).

3

because of her workers' compensation claim. However, plaintiff admitted during her deposition that Ms. Bross never told her that she felt she had been terminated because of her claim and that she was speculating that OSH had retaliated against Ms. Bross when she was let go.[4] *Id.* at 134.

One day, while Ms. Reed was helping plaintiff in the kitchen, she commented that there was a lot of fajita meat left and that the excess had occurred because plaintiff had mixed the vegetables in with the meat. When plaintiff disagreed with her, plaintiff claims Ms. Reed responded "'Well, next time, just do it like I said. <u>You</u> <u>people</u> always got to have the last word. You think you know everything.'" Defendant's Exhibit 2, p. 64 (emphasis added).[5]

Based on that conversation, plaintiff told a coworker, Rhonda, that she needed to speak to Ceil Yowell, OSH's Clinical Operations Officer. Rhonda responded that she needed to talk to her too and explained why. Plaintiff testified that she then said: "'Well, I need to talk to her.' I said, 'Now, I'm stressed, but I love my job. I'm just stressed, and I need to

---

[4]*In support of her allegation that she was discharged for filing a workers' compensation claim, plaintiff cites without discussion her Exhibit 3, which appears to be a list of OSH employees who filed workers' comp claims and their current employment status. The document reflects that between January 2007, and December 1, 2009, 54 OSH employees filed claims, 13 of those individuals are no longer employed at OSH, 4 of the 13 were discharged and the other 9 resigned. The court fails to see how Exhibit 3 supports plaintiff's retaliatory discharge claim. See generally <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F3d. 526, 532 (10th Cir 1994).*

[5]*Citing Defendant's Exhibit 2, p. 19 (page 64 of the actual deposition), plaintiff contends in her brief that she asked Ms. Reed to explain why she had referred to her as "you people," but Ms. Reed refused. However, plaintiff's testimony on the referenced page was that, after the asserted "you people" comment, she (plaintiff) "stepped back" and said "'What did you say,' and she would not repeat herself, and she does that a lot when you ask her something ...." Id.*

4

talk to her.'" Defendant's Exhibit 2, p. 59.[6]

Plaintiff never told Ms. Reed that she felt she was being discriminated against or that she was going to report her alleged discriminatory behavior to Ms. Yowell. Plaintiff admitted that it was pure speculation on her part that Rhonda told Ms. Reed about their conversation. *Id*. at 60. Plaintiff also never complained about Ms. Reed to Ms. Yowell or anyone in management at OSH or reported any discriminatory treatment to her superiors.

Ms. Reed terminated plaintiff on October 23, 2009. Ms. Reed stated that she discharged plaintiff because she was not working out as an employee – she did not get along well with her coworkers and displayed a negative attitude towards her. Before she discharged plaintiff, Ms. Reed spoke with Esther Vana, an employee of a company that provides human resources support to OSH. Ms. Vana exchanged emails with a coworker regarding that conversation. Plaintiff's Exhibit 4. In her email Ms. Vana writes that Ms. Reed had called and informed her that plaintiff had worked for OSH for 90 days and was not working out as an employee. She states that Ms. Reed told her plaintiff had missed work because she thought she had pink eye; a week later hit her head and thought she had a blood clot, but an MRI did not reveal a clot; and about a week later ended up in the emergency room with chest pains and had another MRI, but nothing was found. Ms. Vana then discusses conflicts between plaintiff, Ms. Reed and other staff that Ms. Reed had mentioned and concludes, that based on the information provided she "saw no reason not to let Carol

---

[6]*The record before the court does not reflect that plaintiff told Rhonda what she wanted to discuss with Ms. Yowell. However, the parties have assumed, possibly because of the context in which the remarks were made, that Rhonda knew plaintiff wanted to discuss alleged discriminatory treatment.*

go – 'at will.'" *Id.*

Ms. Reed discharged plaintiff on October 23, 2009,[7] and plaintiff filed this action in state court on November 18, 2009, alleging a racially hostile work environment, retaliatory discharge and race discrimination claims.[8]

Analysis

Retaliatory Discharge –Title VII

Plaintiff's Title VII retaliation claim is analyzed under the McDonnell Douglas burden-shifting framework. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006). Initially she must show that "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Id.* If plaintiff can establish a prima facie case, defendant then must articulate a legitimate, nondiscriminatory or non-retaliatory reason to support its employment decision. If defendant makes the required showing, the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is mere pretext. *Id.*

Plaintiff claims she was discharged for "speak[ing] with her co-worker Rhonda the day after the racist comment made to her by Ms. Reed and [telling] her she intended to speak

---

[7]*Although plaintiff claims OSH "failed to follow its own disciplinary policies when it terminated Plaintiff," plaintiff's response, p. 5, she ignores the provision in OSH's disciplinary procedure which gives management the "right to determine the appropriate level of discipline in any given situation and ... skip or apply any disciplinary step as deemed appropriate under the circumstances." Plaintiff's Exhibit 5, ¶6.*

[8]*Defendant removed the case to federal court.*

with Ms. Yowell when Ms. Yowell returned to work." Plaintiff's response, p. 9.[9] OSH contends plaintiff has not submitted evidence demonstrating the protected opposition or causal connection elements of her prima facie case. Even if she overcomes those hurdles, defendant argues that plaintiff has no evidence showing that its stated reasons for her termination are pretextual.

The court agrees that plaintiff has failed to establish a prima facie case of retaliation under Title VII. Telling a coworker that she intended to speak to Ms. Yowell is not protected conduct. "Although no magic words are required, to qualify as protected opposition the employee must convey <u>to</u> <u>the</u> <u>employer</u> his or her concern that the employer has engaged in a practice made unlawful" by Title VII." Hinds v. Sprint/United Mgmt. Co. 523 F.3d 1187, 1203 (10th Cir. 2008) (emphasis added).

Plaintiff's failure to communicate her complaint to her employer also prevents her from satisfying the causal connection element of her prima facie case. She has not come forward with any evidence from which a reasonable factfinder could conclude that Ms. Reed, the individual who decided to fire her, had knowledge of her protected activity and "was motivated to terminate [her] employment by a desire to retaliate ...." *Id.* at 1203. Plaintiff admitted that she did not know if Rhonda told Ms. Reed about their conversation. Defendant's Exhibit 2, p. 60. The fact that, after she spoke with Rhonda, plaintiff observed Rhonda in the kitchen with Ms. Reed "whispering among each other in front of her,"

---

[9]*It is unclear from the record and plaintiff's response brief whether plaintiff is asserting that she intended to report the racial slur Ms. Reed allegedly made or report the slur and an asserted disproportionate workload.*

plaintiff's response, p. 9, is not enough to show that Ms. Reed knew that plaintiff intended to report her alleged racial slur to Ms. Yowell.

As plaintiff has failed to make out a prima facie case, OSH is entitled to summary judgment on plaintiff's Title VII retaliatory discharge claim.

<u>Retaliatory Discharge –State Claim</u>

The Oklahoma Workers' Compensation Act ("Act") prohibits any "person, firm, partnership, corporation or other entity [from] discharg[ing] ... any employee because the employee has in good faith ...[f]iled a claim [or] ... [i]nstituted or caused to be instituted any proceeding under the [Workers' Compensation Act]." 85 Okla. Stat.§ 5(A)(1), (3). To establish a prima facie case under this statute a plaintiff must demonstrate: (1) employment; (2) an on-the-job injury; (3) receipt of medical treatment which put her employer on notice that treatment had been rendered for a work-related injury; and (4) consequent termination of employment. <u>Blackwell v. Shelter Mut. Ins. Co.</u>, 109 F.3d 1550, 1554 (10th Cir. 1997), citing <u>Buckner v. General Motors Corp.</u>, 760 P.2d 803, 806 (Okla. 1988).[10]

As proof that she was fired in retaliation for pursuing a workers' compensation claim, plaintiff relies on the timing of her termination - within eleven days of her injury; the firing of her co-worker, Ms. Bross, after she was injured at work; Ms. Reed's reaction to plaintiff's injury; and various comments made by Ms. Reed. OSH again challenges plaintiff's ability

---

[10]*If an employee makes her initial showing, the employer then must articulate a legitimate, nonretaliatory reason for the discharge. If the employer rebuts the inference that its motive was retaliatory, the employee must establish that she has been the victim of retaliatory discharge either directly by showing "the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Buckner</u>, 760 P.2d at 807.*

8

to establish a prima facie case of retaliatory discharge, citing a lack of evidence that her termination was significantly motivated by her workers' compensation claim.

While the first three elements of a prima facie case are not in dispute, the fourth is the stumbling block.[11] As construed by the Oklahoma courts, the requirement of "consequent termination" imposes a burden on a plaintiff to "produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising her statutory rights." Blackwell, 109 F.3d at 1554 (quoting Wallace v. Halliburton Co., 850 P.2d 1056, 1058 (Okla. 1993)). "Although a plaintiff need not meet a 'but for' standard, she must present evidence that does more than show the exercise of her statutory rights 'was only one of many possible factors resulting in [her] discharge.'" Id. (quoting Wallace, 850 P.2d at 1059)).

The plaintiff in Blackwell sued her former employer alleging she had been discharged for filing a workers' compensation claim. The plaintiff had injured her back at work, returned to her job and, about a year and a half later, was fired approximately six weeks after she told her supervisor her back was still causing her trouble. The district court granted

---

[11]*Although both parties refer to plaintiff's workers' compensation claim, plaintiff did not file such a claim until November 2, 2009, after she was discharged. Defendant's Exhibit 11. The Act, however, does not require that a claim be filed. It is sufficient if the employee has "instituted any proceeding" under the Act. That phrase, as interpreted by the Oklahoma Supreme Court, includes "the provision of medical treatment by the employer, when accompanied by circumstances (including, e.g., sending the employee home to recuperate from an on-the-job-injury) which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue ...." Buckner, 760 P.2d at 811. Although not disputed by defendant, it is questionable whether plaintiff "instituted proceedings" under the Act. While she received first aid for her head injury, she was released to return to work the next day. It is not certain that the circumstances surrounding her injury "raise[d] a clear inference of an anticipated claim." Id.*

9

summary judgment in the defendant's favor, as he concluded the plaintiff had not presented sufficient evidence to establish the consequent termination element of her prima facie case. The plaintiff's evidence of retaliatory motive included the feeling she got when she first injured her back from her supervisor's "mannerism" that he did not want her "on workers' compensation" and her belief that "other adjusters implied to her that her job would be in jeopardy if she did not return to work." *Id.* at 1551. She also claimed another employee told her he did not believe he was treated fairly after he filed a workers' compensation claim. *Id.*

The Tenth Circuit agreed with the trial court that the plaintiff had "simply failed to establish a nexus between her termination and any protected activity on her part." *Id.* at 1556. The court noted that, as in Taylor v. Cache Creek Nursing Centers, 891 P.2d 607, 610 (Okla.Civ.App. 1994) and Thompson v. Medley Material Handling, Inc., 732 P.2d 461, 464 (Okla. 1987), there was no evidence that Blackwell's employer, Shelter Mutual, "engaged in a pattern of terminating or otherwise discriminating against employees who engaged in protected activity under Oklahoma's Workers' Compensation Act." Blackwell, 109 F.3d at 1555. Also, despite her long tenure with the company Ms. Blackwell had no evidence of "any Shelter Mutual employee, other than herself, who was terminated for initiating a workers' compensation action" and could "refer to only one employee, other than herself, who believed he was treated unfairly for filing a workers' compensation claim." *Id.* Finally, while there was no evidence that Shelter Mutual sought to prevent Ms. Blackwell from filing a workers' compensation claim, there was evidence that the company had repeatedly encouraged her to seek medical treatment for her injury.

Many of the same circumstances are present here. Plaintiff has not shown that OSH systematically terminated employees after they filed comp claims,[12] and her assertion that Ms. Bross was discharged because she was injured at work is mere conjecture. Plaintiff testified that Ms. Reed did not discourage here from reporting the accident or say anything negative about the fact that the plaintiff had been injured. Plaintiff stated Ms. Reed also was helpful in assisting her complete the paperwork required to obtain treatment. Plaintiff's description of Ms. Reed as "kind of agitated" when she reported her head injury is simply too vague to show retaliatory motive

The court recognizes that plaintiff was fired soon after she was injured at work. However, temporal proximity is not enough, by itself, to establish consequent termination. Thompson, 732 P.2d at 464. See Wallace v. Halliburton Co., 850 P.2d 1056, 1059 (Okla. 1993) ("timing does not by itself give rise to the level of evidence required to establish a prima facie case"). "To hold otherwise would be to require any employer laying off a worker who has at any time in the past filed a Workers' Compensation action to submit to a jury trial based purely on the coincidence of the layoff and the past filing." Thompson, 732 P.2d at 464. While the timing of the discharge may be evidence of retaliatory motive, Wallace, 850 P.2d at 1059, here plaintiff offers little else.

Ms. Reed's comments about the handling of her husband's on-the-job injury and her nonbelief in workers' compensation were not directed at plaintiff and occurred before the

---

[12]See supra note 4.

plaintiff was injured. Ms. Reed's statement to plaintiff when she called after being treated at Concentra and her remark/treatment of Ms. Bross after she was injured at work similarly fall short of conduct sufficient to demonstrate "consequent termination."

The only other evidence plaintiff offers to show a link between her on-the-job injury and her discharge consists of the email written by Ms. Vana.[13] Plaintiff asserts that "the first factor listed in the email ....was Plaintiff's health concerns and her on the job injury." Plaintiff's response, p. 11. However, as Ms. Vana, not Ms. Reed, wrote the email, the order in which different issues are discussed is not attributable to OSH. What is significant about the email is there is no mention of plaintiff filing or even potentially filing a workers' compensation claim. *See* Thompson, 732 P.2d at 464 (although employee testified his supervisors' attitude worsened after he filed an action in Workers' Compensation Court and he was laid off six weeks after filing his claim, Oklahoma Supreme Court concluded that "[f]rom the evidence presented nothing can be legally inferred" regarding retaliatory motive). Ms. Reed's evident concern was that plaintiff was possibly missing work when she was not really ill. The email contains nothing which demonstrates that plaintiff's termination was motivated, much less significantly motivated, by the exercise of her statutory rights.

Accordingly, as plaintiff has failed to submit evidence sufficient to support a legal inference that OSH discharged her in retaliation for pursuing her rights under the Oklahoma Workers' Compensation Act, defendant is entitled to summary judgment on her state law

---

[13]*As defendant did not object to the mail, the court has considered its contents, even though it contains hearsay and double hearsay.*

retaliatory discharge claim.

Discriminatory Discharge –Title VII

Plaintiff's evidence of discriminatory discharge hinges principally on the "you people" comment she alleges Ms. Reed made.[14] Based on the record before the court, the question of whether that is enough to allow plaintiff's race discrimination to proceed to trial is close. Because Ms. Reed was the person who hired and fired the plaintiff within a short time span, there is an inference of nondiscrimination. *See* Antonio, 458 F.3d at 1183 ("[I]n cases where 'the employee was hired and fired by the same person within a relatively short time span,' there is 'a strong inference that the employer's stated reason for acting against the employee is not pretextual.'") (quoting Proud v. Stone, 945 F.2d 796, 798 (4th Cir.1991)). The testimony also reflects tension among the kitchen staff, which Ms. Reed attempted to resolve by meeting with the employees, outlining their job responsibilities, and allowing them to air their grievances. As defendant asserts, under the circumstances present here the remark attributed to Ms. Reed arguably could have been a reference to "you people who work in the kitchen." However, considering the evidence and all reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the court concludes the alleged racial slur made by the decision maker to the plaintiff shortly before her termination suffices to create a jury question. *See generally* Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir 1994) (factors considered in determining whether a nexus exists

---

[14]Plaintiff also asserts that she was assigned a heavier workload than her coworkers, but offers no evidence other than her personal belief that she was singled out because of her race.

between age-related comments and employee's discharge include whether the comments were directed toward the employee and whether they were made by a decision maker). Plaintiff's claim that she was discharged because of her race will, therefore, proceed to trial.

Accordingly, defendant's motion for summary judgment [Doc. #18] is **GRANTED** with respect to plaintiff's Title VII and state law retaliatory discharge claims and **DENIED** with respect to her race discrimination claim. Plaintiff's claims that she was terminated because of her race and subjected to a racially hostile work environment will be submitted to a jury. Judgment will be entered in defendant's favor on the retaliatory discharge claims when the case is concluded with respect to all claims. Fed.R.Civ.P. 54(b).

**IT IS SO ORDERED**.

Dated this 27th day of September, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE